**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 27 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

FABIAN LOPEZ-OCHOA,

    Defendant-Appellant.

No. 04-4106
(D.C. No. 1:02-CR-058-TC)
(Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Circuit Judge**, McWILLIAMS**, Senior Circuit Judge, and
**PORFILIO**, Senior Circuit Judge.[**]

---

In a two-count indictment filed on July 31, 2002, Fabian Lopez-Ochoa (the

defendant) was charged as follows: in Count 1 he was charged with possession on May

22, 2002, with an intent to distribute 50 grams, or more, of methamphetamine in violation

of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); and, in Count 2 he was charged with

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[**] Neither party requested oral argument. After examining the briefs and the
appellate record, this three-judge panel has determined unanimously that oral argument
would not be of material assistance in the determination of this appeal. See Fed. R. App.
P. 34(a); 10th Cir. R. 34.1.G. The case is therefore ordered submitted without oral
argument.

possession on May 22, 2002, with an intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(C). On December 12, 2002, the defendant filed a motion to suppress the use at trial of evidence obtained in a search of his residence on May 22, 2002.

On April 25, 2003, the district court held an evidentiary hearing on defendant's motion to suppress. On June 30, 2003, the defendant filed a memorandum in support of his motion to suppress. The government filed a response on July 11, 2003. On November 14, 2003, a second hearing was held and additional evidence was received. After additional briefing, on January 30, 2004, the district court heard final argument on the matter and took the matter under advisement. On February 24, 2004, the district court, in a seven-page order, denied defendant's motion to suppress.

On March 2, 2004, the defendant, pursuant to Fed. R. Crim. P. 11(a)(2), entered a conditional plea of guilty to Count 1 of the indictment, and, on motion of the government, Count 2 was dismissed. The defendant was later sentenced to 135 months imprisonment. The defendant now appeals the district court's order denying his motion to suppress. We affirm.

A brief summary of the background facts out of which this case arises is necessary to understand the one issue raised on appeal. Ryan Read was a deputy in the Weber County Sheriff's Office and Troy Burnett was an officer in the Ogden Police Department, then assigned to the Weber/Morgan Narcotics Strike Force. Both of them testified at the

evidentiary hearing on defendant's motion to suppress, as did the defendant. Read testified that he received information from a citizen informant that an individual named "Louis" was selling drugs out of his residence, and the informant gave him the street address of "Louis." Read also testified that the informant had told him that Louis was driving a gray Chevy Beretta. At 10:00 p.m. on May 22, 2002, Read and Officer Burnett went to the address given Read by the informant, and a gray Chevy Beretta was parked in front of the address given Read. The officers knocked on the front door, and asked the person who opened the door if he was Louis. He said he was not, and said Louis resided in a basement apartment, which had a separate entrance on the side of the house. The officers then knocked on the door to the downstairs apartment. The defendant opened the door. (The defendant matched the physical description given Read by the informant.) Read asked the defendant if he was Louis and he said he was not. Read then asked the defendant for his identification, and the defendant said it was in his bedroom. Read testified that he then asked if "we could go get his [the defendant's] I.D." To that question, according to the officers, the defendant said "Okay" and stepped aside so the officers could enter the doorway, and they followed him downstairs to his apartment. The defendant's testimony on this matter was different. He testified that he thought he was going to get his I.D. by himself, and that only when he reached the entrance to the bedroom, did he realize, for the first time, that the two officers were right behind him.

In any event, the officers followed the defendant into the bedroom area of his

3

apartment. Read testified that he noticed a digital scale and a brown paper bag with some currency sticking out on the top of a card table. The defendant, however, testified that the brown paper bag was "closed" at the top. While the defendant retrieved his identification from his wallet, which was also on the card table, Burnett "nodded" to Read, directing Read's attention to a plastic grocery bag which was on a shelf inside an open closet. Read testified that the bag "was tied tightly so the plastic bag was tight [and] . . ." made it "kind of see-through." Read testified that through this plastic grocery bag, he could see some white powder and some large chunks that looked like cocaine. Read stated that as he stepped closer, he could smell a very strong odor of cocaine. It was later discovered that the plastic grocery bag contained five zip-locked baggies, all sealed and zipped closed, which, in turn, contained "a little powder and mostly rock cocaine." At this point, the defendant handed Read his identification card, which identified him as "Fabian Lopez-Ochoa," whereupon Read arrested the defendant and placed him in handcuffs.

Read then conducted a "protective sweep" of the apartment to make sure that there were no persons hiding in the apartment and that no evidence was being destroyed. Read discovered several small scales and a cutting agent used to dilute methamphetamine. Read also checked the defendant's wallet from which the defendant had provided his identification card and found $1,152.00 in the wallet. Read also found baggies of cocaine in defendant's front pocket. In a small refrigerator, Read found several baggies containing a brown crystalized substance appearing to be methamphetamine.

Read then obtained a state search warrant and, pursuant thereto, searched the defendant's apartment more thoroughly. In that search he found $21,000.00 in a brown paper bag and more "baggies" containing cocaine and methamphetamine.

In denying the defendant's motion to suppress, the district court stated that "the central issue in this case is the credibility of the witnesses." Answering its own question, the district court later on in its order stated that "the court has weighed all the evidence and accepts the testimony of the officers as credible." On appeal, the defendant's only argument is that the district court erred in finding that the officers were credible, i.e., truthful and correct, and that on the present record, the district court was <u>compelled</u> to find that the officers' testimony was not credible. It is the defendant's belief that the officers' entry into defendant's residence was non-consensual, and the evidence gathered thereafter was the "fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471 (1963). We disagree and hold that the present record supports the district court's conclusion that the officers' entry into defendant's residence was consensual.

On review of a district court's denial of a motion to suppress, we review a district court's factual findings under a clearly erroneous standard, viewing the evidence in a light most favorable to the district court's ruling, which, in this case, was in favor of the government. *United States v. Soto,* 988 F.2d 1548, 1551 (10th Cir. 1993). However, we review a district court's holding that the facts so found are "reasonable" under the Fourth Amendment *de novo, United States v. Lambert,* 46 F.3d 1064, 1067 (10th Cir. 1995).

5

And, in this connection, in *United States v. Abdenbi,* 361 F.3d 1282, 1287 (10th Cir. 2004) we said that whether a defendant freely and voluntarily gave his consent to a search is a question of fact and is determined from the totality of the circumstances.

The officers' testimony, which was accepted by the district court as being credible, was that they asked the defendant if they could go downstairs into the bedroom and locate his identification, and that the defendant in response thereto, said "Okay." Consistent with his verbal consent, the defendant then stepped aside in order to allow the officers to enter, and thereafter never voiced any objection to their continued presence.

A warrantless search may be deemed "reasonable" for purposes of the Fourth Amendment if it has been voluntarily consented to by a person lawfully in control of the property searched. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248 (1973).

Defendant's reliance on *United States v. Shaibu*, 920 F.2d 1423, 1428 (9th Cir. 1989) is, in our view, misplaced. In that case, the Ninth Circuit held that "in the absence of a specific request by the police for permission to enter a home, a defendant's failure to object to such entry is not sufficient to establish a free and voluntary consent to enter." In the instant case, the district court held that, as a matter of fact, the officers did ask permission to enter, and that the defendant, in saying "Okay," consented thereto.[1]

---

[1]*See* Webster's Third New International Dictionary, as an "also" to O.K., Okay, "approval, endorsement, authorization, sanction."

Judgment affirmed.

ENTERED FOR THE COURT,


Robert H. McWilliams
Senior Circuit Judge