F I L E D
United States Court of Appeals
Tenth Circuit

FEB 15 2005

PATRICK FISHER
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BRUCE R. SPENCE,

Defendant-Appellant.

No. 04-6118

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 02-CR-219-M)**

Submitted on the briefs:

Robert G. McCampbell, United States Attorney, James F. Robinson, Assistant
United States Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

Thomas D. McCormick, Oklahoma City, Oklahoma, for Defendant-Appellant.

Before, **EBEL**, **MURPHY**, and **McCONNELL**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I.  INTRODUCTION

Bruce R. Spence was charged in the Western District of Oklahoma with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  In the district court, Spence moved to suppress evidence seized in a search of his home.  The court denied the motion after an evidentiary hearing.  Spence then entered a conditional guilty plea reserving his right to appeal the denial of his motion.  This court has jurisdiction pursuant to 28 U.S.C. § 1291.  Because the encounter between the government agents and Spence during the search of his home was consensual, this court **affirms** the district court's denial of Spence's motion to suppress.[1]

## II.  BACKGROUND

The evidence presented at the hearing on the motion to suppress showed that Russian law enforcement officials notified the United States Customs Service that Spence was one of several Americans who had paid to access Russian-based web sites featuring child pornography.  Responding to this information, three agents dressed in plain clothes went to Spence's home in Oklahoma City to conduct a "knock and talk."  Special Agents Paul Masteller and Eric Munson

---

[1]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  Fed. R. Civ. P. 34(f); 10th Cir. R. 34.1(G).  The case is, therefore, ordered submitted without oral argument.

knocked on Spence's front door sometime between ten and eleven o'clock in the morning, while Special Agent Bill Davis waited in a vehicle outside. When Spence answered the door, Masteller and Munson identified themselves as special agents of the United States Customs Service and asked if they could come inside to talk. Spence agreed.

The agents informed Spence that his name had been linked to Russian web sites featuring child pornography. They then asked if they could search his computer. Spence asked at least twice whether he could decline the search request, and Munson responded "[y]ou have a choice . . . you can say no." Spence orally agreed and signed a written consent form. Davis then entered the home to conduct the computer search. While Davis was working on the computer, Masteller and Munson asked Spence if they could search his residence. Spence again orally agreed and signed a second written consent form.

The agents seized two CDs containing images of children engaged in sexually explicit activity. The entire encounter lasted approximately two hours. The next day, Masteller obtained a search warrant and seized Spence's computer and other evidence.

## III. STANDARD OF REVIEW

In reviewing the denial of a motion to suppress, this court views the evidence in the light most favorable to the government and accepts the district

court's factual findings unless clearly erroneous. *United States v. Sanchez*, 89 F.3d 715, 717 (10th Cir. 1996). This court "conduct[s] a *de novo* review of all the relevant circumstances to determine whether an interaction between an individual and a law enforcement officer is a consensual encounter that does not implicate the Fourth Amendment." *United States v. Abdenbi*, 361 F.3d 1282, 1291 (10th Cir. 2004).

## IV. DISCUSSION

The district court concluded that the agents' actions did not constitute an unconstitutional seizure, search, or custodial interrogation within the meaning of the Fourth and Fifth Amendments of the United States Constitution. On appeal, Spence challenges only the district court's conclusion that he was not unconstitutionally seized in violation of the Fourth Amendment.[2]

Spence contends that he was effectively under arrest "at the moment government agents entered his home" and that this arrest was not supported by either a warrant or probable cause. *See United States v. Edwards*, 242 F.3d 928, 933-34 (10th Cir. 2001) ("To be lawful, a warrantless arrest must be supported by probable cause to arrest." (quotation omitted)). He therefore argues the district

---

[2]Accordingly, this court will not examine whether the search of Spence's home and computer violated the Fourth Amendment, or whether Spence was subjected to a custodial interrogation that infringed his rights under the Fifth Amendment.

court should have suppressed any evidence obtained as a result of his unlawful detention. The government does not dispute that the agents had neither probable cause nor a warrant, but instead asserts that the encounter was consensual and that Spence was not under arrest at the time.

A consensual encounter is not a seizure for purposes of the Fourth Amendment. *United States v. Gigley*, 213 F.3d 509, 514 (10th Cir. 2000). A seizure occurs only when an officer, by means of physical force or show of authority, in some way restrains the liberty of a citizen. *United States v. Zapata*, 997 F.2d 751, 756 (10th Cir. 1993). The Supreme Court in *Florida v. Bostick* held that, "in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." 501 U.S. 429, 439 (1991). This court has identified several factors relevant to this inquiry:

> the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

*Zapata*, 997 F.2d at 756-57 (quotations, citations, and alteration omitted). The list of factors is non-exclusive and no one factor is dispositive. *Abdenbi*, 361 F.3d at 1291. The focus of the test is on "the coercive effect of police conduct, taken as a whole on a reasonable person." *United States v. Little*, 18 F.3d 1499, 1504 (10th Cir. 1994) (en banc) (quotation omitted).

Spence's primary argument is that the encounter took place within his home and that "[t]he highest Fourth Amendment requirements therefore attach." Although Spence is correct that he had an increased expectation of privacy within his own home, this privacy expectation "has limited relevance to the question of whether a reasonable person would believe that he or she is unable to terminate the encounter." *Little*, 18 F.3d at 1505 (noting that an individual's increased expectation of privacy is primarily relevant to the question of the reasonableness of a police search, not to whether an encounter is consensual) (quotation omitted); *see also United States v. Kim*, 27 F.3d 947, 953 (3d Cir. 1994) ("As far as consent is concerned, one may consent to an encounter in the privacy of his own home or in a public square."). This court does consider "interaction in a nonpublic place . . . and the absence of other members of the public" as factors pointing toward a nonconsensual encounter. *Sanchez*, 89 F.3d at 718. The particular location of the encounter, however, is only one factor in the totality of the circumstances test. *Little*, 18 F.3d at 1503. There is no *per se* rule that a police

-6-

encounter within an individual's home is a seizure within the meaning of the Fourth Amendment. *See Abdenbi*, 361 F.3d at 1288 ("[I]t is axiomatic that all requests to search a home or apartment are made in nonpublic places."); *United States v. Jerez*, 108 F.3d 684, 691-92 (7th Cir. 1997) (recognizing that a "knock and talk" is ordinarily consensual unless coercive circumstances exist).

Even assuming Spence is correct that his presence in his own home weighs toward the conclusion that a seizure occurred,[3] the district court was correct in this case to conclude the encounter was consensual. Spence admits that the agents asked for permission to enter his home and that he invited them inside. The agents' request for permission to enter is not the same thing as an explicit advisement that Spence had the right to terminate the encounter or refuse consent. *See Zapata*, 997 F.2d at 757 n.4. An explicit advisement, however, "is not a *requirement*; it is merely a factor to be considered in the totality of the circumstances." *Id.* In the circumstances of this case, Spence's agreement to allow the agents inside his home weighs toward the conclusion that the encounter was voluntary. Furthermore, Spence was explicitly told at least twice that he could refuse consent to search his computer. *See Little*, 18 F.3d at 1505 (noting

---

[3]*But cf. United States v. Rogers*, 391 F.3d 1165, 1170 (10th Cir. 2004) (noting that an encounter occurring in the defendant's home weighed against a conclusion that the defendant was in custody for Fifth Amendment purposes).

that an advisement concerning consent to search is relevant to the totality of the circumstances in determining whether there has been a seizure).

The district court found that the agents were dressed in plain clothes and did not display their weapons at any time, that their tone and demeanor were professional, and that there was no evidence that they raised their voices or physically touched or restrained Spence. *See Abdenbi*, 361 F.3d at 1292 (concluding that no seizure occurred when "the encounter was calm and orderly with no show of force or physical touching"). The court further found that the encounter occurred at a reasonable hour, and that the agents did not take possession of Spence's identification or other belongings, except for the evidence seized, for any measurable period of time. Although there were three agents in Spence's home, only Masteller and Munson were involved in questioning Spence. In this case, the presence of more than one agent "does not outweigh the multiple other factors indicating a purely consensual encounter." *Zapata*, 997 F.2d at 757.

The only other factor Spence argues indicates an unconstitutional seizure is that he was not allowed to walk around his home unattended. The district court found, however, that "Spence was not actually prevented from moving about his home" aside from two particular instances when the agents told Spence to leave the room while Davis was conducting the computer search, and when they opened

a closet door before allowing Spence to retrieve a book.[4]  There is no evidence that the agents displayed their weapons, physically touched Spence, or raised their voices during the two occasions when they limited his movement.  Furthermore, these two incidents were themselves a direct result of Spence twice giving the agents his consent to search.  A reasonable person in Spence's position would have felt free to ask the agents to terminate the search and leave.

Viewed in light of the totality of the circumstances, this court concludes that the agents' conduct would have communicated to a reasonable person that their requests could have been declined and the encounter terminated at any time. The encounter was consensual and there was no illegal seizure in violation of the Fourth Amendment.

## V.  CONCLUSION

For the foregoing reasons, the district court's denial of Spence's motion to suppress is **AFFIRMED**.

---

[4]Although Munson did testify that he subjectively intended to further limit Spence's movements in order to ensure the agents' safety, there is no evidence that these restrictions were ever communicated to Spence.  *See Abdenbi*, 361 F.3d at 1292-93 (noting that the subjective state of mind of a government agent is irrelevant to the question whether a reasonable person would feel free to terminate an encounter).  Spence never attempted to leave his home and was not otherwise blocked by the agents or restricted in any way.