**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 11, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

BOBBY JUDE LOPEZ,

Defendant-Appellee.

No. 05-1323

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 04-CR-500-D)**

---

James C. Murphy, Assistant United States Attorney (William J. Leone, United States Attorney, Philip A. Brimmer, Assistant United States Attorney, with him on the briefs), Denver, Colorado, for Plaintiff-Appellant.

Lynn C. Hartfield, Research and Writing Specialist (Raymond P. Moore, Federal Public Defender, John A. Chanin, Assistant Federal Public Defender, with her on the brief), Denver, Colorado, for Defendant-Appellee.

---

Before **HENRY**, **BALDOCK** and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.    Introduction

Appellant Bobby Jude Lopez was charged in a two-count indictment with possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841, and possession of ammunition by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Before trial, Lopez moved to suppress the evidence recovered from a search of his person and his car.  Lopez argued the evidence was the fruit of an unlawful detention.  The district court granted Lopez's motion, concluding Lopez was seized in violation of the Fourth Amendment when a police officer approached him on the street, requested identification, and then held his driver's license while running a computer check.  The government brought this appeal, challenging the district court's conclusion Lopez's detention was unconstitutional.  Exercising jurisdiction pursuant to 18 U.S.C. § 3731, we **affirm** the district court's order granting Lopez's suppression motion.

## II.    Background

During a routine patrol on November 24, 2004, Denver police officer Bryce Jackson observed two men standing in the middle of the street next to a car parked with its engine running.  The two men were Defendant Lopez and his friend Randy Romero.  Jackson testified the car was not obstructing traffic but he made the decision to contact Lopez and Romero because it was very early in the morning and the street borders a high-crime area.  Before exiting his patrol car,

Jackson checked the license plate of the car on his mobile data terminal. He learned the car had not been reported stolen and it was registered to a woman in Westminster, Colorado.

Jackson stopped his car approximately twenty feet behind Lopez and Romero. His spotlight was on, but not his overhead lights or siren. Jackson asked the men if either of them owned the car and Lopez responded that the car belonged to him. Jackson then approached the two men and asked them for identification. Romero produced a Colorado identification card and Lopez produced a Colorado driver's license. The address on Lopez's license matched the address of the registered owner of the car. Nevertheless, Jackson took Lopez's license to his patrol car and ran a warrants check. Jackson testified he did not ask Romero and Lopez to remain by the car. Romero, however, testified Jackson instructed them to stay by the car and the district court found that Jackson "told the men to wait by the rear of the parked car." The government does not challenge this finding as clearly erroneous.

The warrants check revealed Lopez had an outstanding warrant for a misdemeanor charge of harboring a minor. Based on this information, Jackson called for backup and a second officer arrived approximately five minutes later. Lopez was arrested and searched. During the search, Jackson found crack cocaine

in Lopez's pants pocket. When Jackson searched Lopez's car, he discovered a .22 revolver under the front seat, some plastic sandwich bags, and an electronic scale.

Lopez was charged in a two-count indictment with possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841, and possession of ammunition by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). Shortly after the indictment was filed, Lopez moved to suppress the evidence recovered at the time of his arrest. The district court held a suppression hearing, at which both Jackson and Romero testified. After the hearing, the district court issued a written order suppressing the drugs and other evidence, concluding they were the fruits of an unlawful detention. The district court accepted the government's concession that Jackson did not have reasonable suspicion of criminal activity when he first contacted Lopez. Next, relying on case law from this court and other circuits, the court concluded Lopez was not free to leave, and thus seized, once Jackson took possession of his driver's licence and retained it to run the computer check. The government has appealed the district court's ruling, arguing the encounter between Lopez and Jackson was consensual and thus did not implicate the Fourth Amendment.

## III.   Discussion

When reviewing the grant of a motion to suppress, this court examines the evidence in the light most favorable to the defendant and accepts the district

court's factual findings unless they are clearly erroneous. *United States v. Nielson*, 415 F.3d 1195, 1198 (10th Cir. 2005). The ultimate determination as to whether an officer's conduct violates the Fourth Amendment, however, is reviewed de novo. *United States v. Oliver*, 363 F.3d 1061, 1065 (10th Cir. 2004).

This court has identified three categories of police-citizen encounters: "(1) consensual encounters which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause." *United States v. Torres-Guevara*, 147 F.3d 1261, 1264 (10th Cir. 1998) (quotation omitted). Lopez did not argue he was under arrest at the time Jackson ran the computer check and discovered the outstanding warrant. Consequently, we must only determine whether the encounter between Lopez and Jackson was either consensual or an investigative detention. Because the government has conceded Jackson did not have reasonable articulable suspicion to support an investigative detention, we must affirm the district court's grant of Lopez's motion to suppress if we conclude the encounter was not consensual.

The Supreme Court has made clear that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions."

-5-

*Florida v. Bostick*, 501 U.S. 429, 434 (1991). To constitute a seizure, an encounter between an officer and a citizen must involve the use of physical force or show of authority on the part of the officer such that a reasonable person would not feel free to decline the officer's requests or terminate the encounter. *Id*. at 439.

The government argues the encounter was consensual in its entirety because Lopez voluntarily handed his license to Jackson, thereby implicitly consenting to Jackson's use of the license for a reasonable period of time, including the time necessary to run a computer check. According to the government, it was reasonable for Jackson to believe Lopez agreed to allow his license to be used for a warrants check. This argument is inapposite because our analysis of the seizure issue focuses on assessing the encounter from the perspective of a reasonable person in Lopez's position, not a reasonable person in Jackson's position.[1] *See*

---

[1]The government's brief is less than clear. To the extent the government argues the encounter was consensual "in fact" even if Lopez was seized, that is not an argument it made before the district court. *Cf. United States v. Caro*, 248 F.3d 1240, 1247 (10th Cir. 2001). Accordingly, we will not consider it for the first time in this appeal. *See Robbins v. Wilkie*, 433 F.3d 755, 772 (10th Cir. 2006). At oral argument, the government also asserted the right to interrogate an individual about his identity necessarily encompasses the right to run a computer check on the individual. *Cf. Hiibel v. Sixth Judicial District Court of Nevada*, 542 U.S. 177, 185-86 (2004). Again, this argument was not presented to the district court and we, therefore, do not address it. *United States v. Almaraz*, 306 F.3d 1031, 1040 (10th Cir. 2002) (holding arguments presented for the first time during oral argument are waived).

*INS v. Delgado*, 466 U.S. 210, 215 (1984) ("[A]n initially consensual encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment, if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (quotation omitted)). Further, it is settled that "the nature of the police-citizen encounter can change–what may begin as a consensual encounter may change to an investigative detention if the police conduct changes and vice versa." *United States v. Zapata*, 997 F.2d 751, 756 n.3 (10th Cir. 1993).

In *Florida v. Royer*, two plainclothes officers approached Mr. Royer at an airport and requested his driver's license and airline ticket. 460 U.S. 491, 494 (1983) (plurality opinion). Royer handed the documents to the officers "[u]pon request, but without oral consent." *Id*. (plurality opinion). Without returning his documents, the officers asked Royer to accompany them to a small room where they questioned him further and, eventually, searched his luggage. *Id*. at 494-95 (plurality opinion). Although the Supreme Court noted it was "no doubt permissible" for the officers to ask for and examine Royer's ticket and license, it quickly rejected the government's argument that the encounter between Royer and the officers was wholly consensual. *Id*. at 501 (plurality opinion). In reaching the conclusion Royer was seized for purposes of the Fourth Amendment, the Court examined events that occurred *after* Royer voluntarily relinquished his

documents. The Court relied on information in the record demonstrating "the officers identified themselves as narcotics agents, told Royer that he was suspected of transporting narcotics, and asked him to accompany them to the police room, while retaining his ticket and driver's license and without indicating in any way that he was free to depart." *Id.* (plurality opinion). Consistent with *Delgado* and *Royer*, even if we assume the encounter between Lopez and Jackson began consensually, we must still determine whether at some point during that encounter, Jackson's conduct would have communicated to a reasonable person that he was *no longer* free to decline Jackson's requests or otherwise end the encounter. *See Delgado*, 466 U.S. at 215; *Royer*, 460 U.S. at 501 (plurality opinion).

This court has enumerated a non-exhaustive list of circumstances to be considered in determining whether a police-citizen encounter amounts to a seizure:

> the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

*United States v. Spence*, 397 F.3d 1280, 1283 (10th Cir. 2005) (quotation

omitted). Although no single factor is dispositive, the "strong presence of two or

three factors" may be sufficient to support the conclusion a seizure occurred.

*Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1203 (10th Cir. 2006)

(quotation omitted). There is no dispute that Jackson and Lopez were in an open,

public place when Jackson contacted Lopez. Additionally, Jackson was the only

officer on the scene until after the warrants check was run and nothing in the

record indicates Jackson displayed his weapon during the encounter. It is

uncontested, however, that Jackson was driving a marked patrol car and was

dressed in his uniform. The district court found that Jackson "shined his high-

powered spotlight on Mr. Lopez and Mr. Romero as he approached them, spoke to

them through his loud-speaker," and did not advise Lopez he had the right to

terminate the encounter. Further, the district court found that Jackson specifically

instructed Lopez to remain by the parked car and then walked to his police cruiser

with Lopez's license. The government does not challenge any of these findings.

The district court also analyzed "whether and for how long" Jackson retained

Lopez's license. *Spence*, 397 F.3d at 1283. The court concluded Jackson retained

Lopez's license for more than a brief examination. The government argues it was

reasonable for Jackson to hold Lopez's license for five minutes[2] and, thus, Jackson did not retain Lopez's license for an undue length of time.

It is well-established that the Fourth Amendment is not implicated when an officer approaches an individual in a public place and requests, but does not demand, to see his identification. *United States v. Mendenhall*, 446 U.S. 544, 555 (1980) ("The respondent was not seized simply by reason of the fact that the agents approached her, asked her if she would show them her ticket and identification, and posed to her a few questions."). The Supreme Court has also made clear, however, that an individual "may not be detained *even momentarily* without reasonable, objective grounds for doing so." *Royer*, 460 U.S. at 498. Here, Jackson testified he approached Lopez because it was late at night and Lopez was standing in a high-crime area. At the time he asked for Lopez's identification, Jackson knew the address of the owner of the car next to which Lopez was standing and knew the car had not been reported stolen. Within seconds of reviewing Lopez's license, Jackson was able to establish Lopez's identity and confirm that Lopez's address matched the address on the car

---

[2]Because we conclude the continued retention of Lopez's license was undue nearly immediately after Lopez relinquished it to Jackson, it is unnecessary to address the government's argument that the district court clearly erred when it found Jackson retained Lopez's license for ten minutes. Accordingly, for purposes of this appeal we will assume Jackson held the license for only five minutes before discovering the existence of the outstanding warrant.

registration. After that point in time, the continued retention of Lopez's license was undue.

This court arrived at the same conclusion in *United States v. Lambert*, 46 F.3d 1064, 1069 n.3 (10th Cir. 1995). In *Lambert*, narcotics agents followed the defendant through an airport to the parking lot. *Id*. at 1066. The agents asked Mr. Lambert for his driver's license and airline ticket, actions which this court concluded did not implicate the Fourth Amendment. *Id*. at 1068. We held, however, that the encounter between Mr. Lambert and the agents "became an investigative detention once the agents received Mr. Lambert's driver's license and did not return it to him." *Id*. The government attempts to distinguish *Lambert* on the basis that the agents retained Mr. Lambert's license for approximately thirty minutes while, here, Jackson retained Lopez's license for only five minutes. The government's argument falls short because our conclusion in *Lambert* was not compelled by the fact that the agents held Mr. Lambert's license for thirty minutes. Instead, we held that the retention of Mr. Lambert's license became undue nearly immediately after the officers took possession of it. *Id*. at 1069 n.3 (stating "the retention of Mr. Lambert's license was unjustified after the agents were able to verify his identity with it" and further stating that Mr. Lambert's identity was established "almost immediately after the agents received his license").

Having considered the relevant factors and the district court's uncontested findings of fact, we conclude the encounter between Lopez and Jackson was not consensual at the time of the warrants check and, thus, Lopez was seized. Jackson, a uniformed officer in a marked police cruiser, not only held Lopez's license for longer than necessary to confirm Lopez's identification, he specifically instructed Lopez to remain by his vehicle while he ran the warrants check and then took Lopez's license back to his patrol car, thereby rendering Lopez unable to leave. Under the totality of the circumstances, no reasonable person in Lopez's position would have felt free to terminate the encounter with Jackson. Because the government concedes Jackson did not have probable cause or reasonable articulable suspicion to detain Lopez until the warrants check was completed, we conclude the seizure violated the Fourth Amendment.

## IV. Conclusion

The order of the district court granting Lopez's motion to suppress is **affirmed**.