FILED
United States Court of Appeals
Tenth Circuit

January 30, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ARTEMUS DEONTE MATTHEWS,

    Defendant - Appellant.

No. 11-5020
(N.D. Okla.)
(D.C. No. 4:10-CR-00148-CVE-1)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **HOLMES**, Circuit Judge.

Artemus Matthews entered a conditional guilty plea to being a felon in possession of a firearm, reserving his right to appeal from the district court's denial of his motion to suppress evidence. He challenges the district court's conclusion that the officers had a legal basis to detain him while they checked his background for outstanding warrants. We agree; his detention was not supported by reasonable suspicion. We reverse.

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

# I.   BACKGROUND

Around 8:00 p.m. on July 1, 2010, before dark, Tulsa police officers James Bohanon and Brian Blair were conducting an investigation at a Tulsa Housing Authority apartment complex in Tulsa, Oklahoma.  The complex had been the site of recent gang-related violence.  The two officers were watching an apartment within the complex. They were parked in an unmarked police car in a lot across the street.  Their investigation was unrelated to Matthews.

At some point, Bohanon noticed two men, later identified as Matthews and John Spencer, standing beside a car parked within the complex.  The neighborhood was quiet except for loud music emanating from the men's parked car.  Bohanon observed one of the men "reach in [the car] and then kind of look around and then reach in again and look around." (R. Vol. II at 14.)  Bohannon testified he "didn't quite know what [Matthews] was up to, so at that time [he] contacted Officer [Steven] Sanders." (Id.)  Bohannon "told him there was [sic] some guys standing over here by a car that are kind of acting suspicious and . . . asked him to check it out." (Id.)[1]

---

[1] On cross examination Bohanon was asked:

Q.      What you observed were two individuals standing outside a car that was playing music, is that right?

A.      Yes, sir.

Q.      Okay. And one of the individuals reached in the car?

A.      Yes.

Sanders, plainly dressed as a Tulsa law enforcement officer, drove his undercover car to the area where Matthews and Spencer were standing. As Sanders neared the men, he saw one of them reach into the car to turn the music down. Sanders first identified himself and then engaged them in casual conversation. Bohanon, approaching on foot but still some twenty-five yards away, observed Sanders "just kind of talking . . . with the guys. They were kind of chuckling and laughing and stuff." (*Id*. at 16, 18.)

The men told Sanders they were not residents of the complex but were there as visitors. Sanders told them they were on Tulsa Housing Authority property and needed to have identification.[2] Both men produced valid Oklahoma identification. As Bohanon and Blair walked toward the scene, Sanders took the identification documents and returned to his police car to request a warrants check. Sanders discovered Matthews had an outstanding arrest warrant; he returned and told Bohanon and Blair about the warrant. The officers informed Matthews he was under arrest. As Bohanon began placing handcuffs on him, Matthews told Bohanon he had a gun. A loaded .22 caliber semiautomatic pistol was found in Matthews' right front pants pocket. Matthews was

---

Q.    A couple of times?

A.    Yes, sir.

Q.    And that was your suspicion that something was afoot?

A.    Yes. Given the area and those circumstances, yes.

(R. Vol. 2 at 24.)

[2] Matthews does not contest that Tulsa Housing Authority has specific rules allowing only residents and their guests to be on the property. In addition, all persons must be able to show identification.

transported to the police station for booking.

An indictment charged Matthews with felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g).  Following the denial of his motion to suppress the evidence, Matthews entered a conditional plea of guilty and was sentenced to six months imprisonment.

## II.    DISCUSSION

When reviewing the denial of a motion to suppress, "we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review *de novo* the ultimate determination of reasonableness under the Fourth Amendment."  *United States v. Polly*, 630 F.3d 991, 996 (10th Cir. 2011).  There are three categories of police-citizen encounters: "(1) consensual encounters which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause."  *United States v. Lopez*, 443 F.3d 1280, 1283 (10th Cir. 2006) (quotations omitted).  "[I]t is settled that the nature of the police-citizen encounter can change — what may begin as a consensual encounter may change to an investigative detention if the police conduct changes and vice versa."  *Id*. (quotations omitted).

All agree that this incident began as a consensual encounter.  *See United States v. Santillanes*, 848 F.2d 1103, 1106 (10th Cir. 1988) (a consensual encounter is "characterized by the voluntary cooperation of a citizen in response to non-coercive

questioning"). And Matthews does not contend the officers lacked probable cause for his arrest once the outstanding warrants were discovered. His motion to suppress was tightly focused; his detention while Sanders took his identification to do a warrants check was not supported by a reasonable, articulable suspicion[3] that he may be engaged in criminal activity.

A. Reasonable Suspicion

An officer must have reasonable suspicion to detain a person for investigation. *See Terry v. Ohio,* 392 U.S. 1, 20-21 (1968). "[T]he likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu,* 534 U.S. 266, 274 (2002). The detaining officer must "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry,* 392 U.S. at 21. "And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.* at 27. We determine the reasonableness of an investigative detention by applying a two-prong test: (i) whether the officer's action was justified at its inception; and (ii) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Id.* at 20.

---

[3] The government seems to concede that reasonable suspicion was necessary to temporarily retain Matthews' identification (and thereby detain him) during the warrants check. It does not argue otherwise.

Reasonableness is determined "in light of common sense and ordinary human experience." *United States v. Mendez,* 118 F. 3d 1426, 1431 (10th Cir. 1997) (citations omitted). "This approach is intended to avoid unrealistic second-guessing of police officers' decisions and to accord appropriate deference to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." *United States v. Gutierrez-Daniez,* 131 F.3d 939, 942 (10th Cir. 1997) (quotations omitted). "Law enforcement officers may perceive meaning in actions that appear innocuous to the untrained observer." *Id.* "This process allows officers to draw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Arvizu,* 534 U.S. at 273. The totality of the circumstances must be considered and neither the officer nor the court need "rule out the possibility of innocent conduct." *Id.* at 277.

Matthews argues the district court relied on only two facts in concluding that reasonable suspicion existed at the inception of the investigative detention: (1) Matthews' suspicious activity of reaching into the vehicle several times, and (2) the locus of the events – in a "high-crime" area. He contends that once the suspicious activity was investigated by Sanders and determined to be innocent (Matthews was merely reaching into the car to adjust the music volume), reasonable suspicion could be supported only because the event occurred in a "high-crime" area – a factor which, standing alone, does not give rise to reasonable suspicion of criminal activity. *See Illinois v. Wardlow,* 528 U.S. 119, 124 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the

person is committing a crime.").

At the suppression hearing, Officer Sanders was asked: "Did you observe anything suspicious as you walked up to [the two men]?" (R. Vol. II at 33.) Sanders responded: "Anything suspicious for me? One of them reached into the vehicle as I got out of my car. I ultimately figured out that was to turn the music down." (*Id.*) His testimony did nothing to add to the quantum of information that might amount to reasonable suspicion.

But, "[u]nder [the fellow officer] doctrine, when law enforcement officials rely on a bulletin or alert to conduct a stop or make an arrest, the relevant inquiry is whether the officer who issued the alert — rather than the officer who conducted the challenged action — had the requisite level of suspicion." *United States v. Wilkinson*, 633 F.3d 938, 941 (10th Cir.), *cert. denied*, 131 S. Ct. 2922 (2011). "Th[e] balance of interests — the substantial advantage to law enforcement in facilitating their communications outweighing the minimal protection to citizens from requiring detailed messages between officers — applies equally when the offense for which there is reasonable suspicion is a misdemeanor rather than a felony." *Id*. at 942.

That said, this case turns upon whether Bohanon's testimony articulated a reasonable suspicion of criminal activity. As Matthews describes it, Bohanon "observed nothing more than two men standing next to a parked car that was playing loud music. The neighborhood had recently experienced violence and gang-related activity, but nothing was articulated which would have tied the two men to such criminal activity." (Appellant's Opening Br. at 23.)

The district court saw it differently, reasoning as follows:

> Bohanon's interest in Matthews was aroused because he observed defendant looking around and reaching into a car several times. Although these actions may not, on their own, be worthy of suspicion, based on Bohanon's experience as an officer he found this behavior in a high crime area to be indicative of criminal activity. Deferring to the judgment of the officers, Bohanon's interpretation of defendant's actions is sufficient to create reasonable suspicion that would justify an investigatory detention.

(R. Vol. 1 at 24.)

Looking to "the reasonableness of the officer's suspicions [under] an objective standard taking the totality of the circumstances and information available to the officers into account," nothing in the record supports the court's conclusion. *United States v. Burleson*, 657 F.3d 1040, 1047-48 (10th Cir. 2011). We are mindful that a reasonable suspicion "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Davis*, 636 F.3d 1281, 1291 (10th Cir. 2011) (quotations omitted). But it is well-settled that reasonable suspicion cannot be based upon a "mere hunch." *Id.*

Although Matthews was on Tulsa Housing Authority property where there had recently been violence and gang activity, the government did not ask, and Bohanon did not state, why the actions he observed were indicative of criminal activity or what criminal activity he suspected. It was daylight and there is no indication that the men were trying to keep a low profile. To the contrary, they were standing in a public parking lot with the music blasting. At one point, Bohanon said he saw Matthews "continually" look around, reach into the car and then look around. (R. Vol. II at 14.) This description is tempered, however, by his admission on cross-examination that he saw this activity "a couple of times." (*Id*. at 23-24.)

Most importantly, Bohanon's testimony was entirely equivocal. He stated he "didn't quite know what [Matthews] was up to" when he contacted Officer Sanders. And, consistent with this generalized observation, the only information Bohanon gave to Sanders was that "some guys standing over here by a car that are *kind of* acting suspicious" and "to check it out." (R. Vol. 2 at 14 (emphasis added.)) This directive to Sanders, even in combination with his other testimony, does not convey an objective and particularized suspicion of criminal activity. Instead, it supports exactly what occurred, a consensual encounter to determine what the men were "up to." Sanders testified to the men being friendly and cooperative. They willingly explained their presence on the property while providing valid identification. There was nothing to suggest the encounter should proceed further.

To be sure, the district court judge had the benefit of hearing the testimony first-hand and credited Bohanon's judgment of the facts. But Bohanon never testified that he suspected *criminal* activity based on his initial observations. As the Third Circuit has stated:

> We construe the record in the light most favorable to the government. However, in doing so we do not supply the testimony that the government failed to elicit during the suppression hearing. Similarly, we must refrain from drawing inferences that are either not supported by the record, or contrary to it, in an effort to uphold an arrest.

*United States v. Meyers*, 308 F.3d 251, 255 (3d Cir. 2002) (citation omitted). In this instance, had the prosecutor elicited more facts, the result might well be different. But given the limits of Bohanon's testimony, the court erred in concluding Bohanon articulated an objective and particularized suspicion that Matthews was involved in

criminal activity.

We Reverse and Remand for further proceedings in accord with this decision.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge