ORDER AND JUDGMENT**
WILLIAM J. HOLLOWAY, JR., Circuit Judge.
Late in the afternoon on August 28, 2010, Defendant-Appellee Chase Joseph Dell and a female companion were peering into the windows of a legally parked automobile. The car was parked on a street in the Glendale neighborhood of Salt Lake City, which is thought by some to be a high-crime neighborhood. A police officer was patrolling the neighborhood in his squad car, and observed Mr. Dell and his female companion looking into the parked car. Mr. Dell looked toward the patrolling officer, and immediately thereafter he and his companion walked away from the parked car, though the companion equivocated before following Mr. Dell’s lead. The officer, based on these observations, desired further investigation of Mr. Dell and his companion. So he signaled Mr. Dell over to his car in order to ask some questions. From that point on, Mr. Dell’s behavior became more and more suspicious, and ultimately the officer found a gun in Mr. Dell’s possession. As a result, Mr. Dell, who is a convicted felon, was charged with illegally possessing a firearm in violation of 18 U.S.C. § 922(g)(1).
Mr. Dell moved the district court to suppress evidence seized from his person and statements made during the detention, arguing that the officer illegally detained him by ordering him to approach the police car. After an evidentiary hearing, the district court granted Mr. Dell’s suppression motion. The United States brings this interlocutory appeal from that decision. We AFFIRM, concluding the district court correctly ruled that the officer lacked the requisite reasonable suspicion to initiate an investigative detention of Mr. Dell.
*442 I
“When reviewing the grant of a motion to suppress, this Court examines the evidence in the light most favorable to the defendant and accepts the district court’s factual findings unless they are clearly erroneous.” United States v. Lopez, 443 F.3d 1280, 1283 (10th Cir.2006). “The ultimate determination as to whether an officer’s conduct violates the Fourth Amendment, however, is reviewed de novo.” Id. Because we owe deference to the district court’s factual findings, and because neither party challenges any of those findings as clearly erroneous, our recitation of the facts draws extensively from the district court’s order, United States v. Dell, No. 2:10-CR-896-TC, 2011 WL 939383 (D.Utah Mar. 16, 2011) (hereinafter “Order”).
At around 5:00 p.m. on August 28, 2010, Officer Moe Tafisi of the Salt Lake City Police Department was on patrol in the Glendale neighborhood of Salt Lake City, an area which he had patrolled for the entirety of his six and a half years with the department. Order at *1. Officer Tafisi testified that he believes the Glendale area has a high rate of certain types of crime, specifically car break-ins and drug offenses. Id. Neither he nor the government, however, offered any statistical data or other evidence to support this observation. Id.
Officer Tafisi drove his patrol car southbound on Navajo Street, and when he neared the intersection with 550 South, he saw a man (later identified as Mr. Dell) and woman peering into the windows of a car which was legally parked on the street. Id.; R. at 84. Mr. Dell was on the driver side and the woman on the passenger side, and each was hunched over, looking back and forth inside the car. Order at *1. Before Officer Tafisi’s patrol car reached the parked car, Mr. Dell looked in his direction and thereafter walked away from the parked car. Id. The woman initially followed Mr. Dell, but returned to the parked car momentarily before finally following a few steps behind him. Id. Officer Tafisi never saw either individual touch the car in any way, nor did he see them possessing any tools or objects. Id.
The individuals walked in the same direction Officer Tafisi was travelling. Id. Desiring further investigation, Officer Taf-isi drove past them, made a U-turn at the next intersection, and then parked his car in the street. Id. From inside the parked patrol car, he waved Mr. Dell over to his patrol car, and simultaneously called out, “Hey, come over.”[1] Id. Mr. Dell promptly complied with the instruction, and approached Officer Tafisi’s patrol car. Id.
At this point, we have set forth all the operative facts — the government concedes that by the time Officer Tafisi said, “Hey, come over,” a Fourth Amendment seizure began. We do not recite in detail what happened after the initial interaction, because the district court made no determinations as to the continuing validity of the investigative detention. For our purposes, it suffices to acknowledge that after Mr. Dell walked up to the patrol car, Officer Tafisi became more and more suspicious for a variety of reasons, and after a period of time — perhaps half an hour, though the *443 precise length of time is not clear from the record — identified Mr. Dell as a convicted felon and found a gun on his person.
II
The government brought a one-count indictment charging Mr. Dell, who is a convicted felon, with a violation of 18 U.S.C. § 922(g)(1), which prohibits felons from possessing firearms. Mr. Dell moved to suppress all evidence seized during his encounter with Officer Tafisi, including the gun he was allegedly carrying illegally.
Police-citizen encounters are divided into three categories: (1) consensual encounters which do not implicate the Fourth Amendment; (2) under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests which are reasonable only if supported by probable cause. United States v. Lopez, 443 F.3d 1280, 1283 (10th Cir.2006). In the district court, the government argued that Officer Tafi-si’s initial interaction with Mr. Dell was a consensual encounter and that, in any event, Officer Tafisi had reasonable suspicion to conduct an investigative detention of Mr. Dell.
The district court concluded that Officer Tafisi initiated an investigative detention of Mr. Dell rather than a consensual encounter. Order at *3. In considering whether the detention was reasonable under the Fourth Amendment, the court noted that Mr. Dell’s behavior of standing by a parked car and looking into the windows back and forth was no different from that of other pedestrians in the neighborhood. Id. at *5 (citing Brown v. Texas, 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); Reid v. Georgia, 448 U.S. 438, 441, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980)). The court also held that the description of Glendale as a high-crime area was insufficient to give Officer Tafisi reasonable suspicion. Id. (citing Brown, 443 U.S. at 52, 99 S.Ct. 2637). Also insufficient in the district court’s view was the fact that Mr. Dell and his companion walked away from the parked vehicle once Mr. Dell saw Officer Tafisi approaching. Id. (citing United States v. Davis, 94 F.3d 1465, 1469 (10th Cir.1996)). The district court also analyzed the totality of the circumstances, concluding that all the facts, taken together, did not amount to reasonable suspicion that Mr. Dell was engaged in criminal activity. Id.
As a result, the district court granted Mr. Dell’s suppression motion. Id. at *6. The government filed this interlocutory appeal from that decision. We have jurisdiction to hear this interlocutory appeal pursuant to 18 U.S.C. § 3731.[2]
*444 On appeal, the government has deliberately abandoned its argument that this was a consensual encounter. Aplt. Reply Br. at 2 n. 1 (“Although an argument could be made that the initial encounter was consensual, the United States has elected not to pursue this theory on appeal.”). Thus, we only inquire whether Officer Taf-isi had reasonable suspicion of criminal activity when he seized Mr. Dell. If he did not, the government concedes, the seizure was illegal, and fruits of the seizure— including evidence of Mr. Dell’s gun possession — must be suppressed.
Ill
The dispute in this case is straightforward: Did the facts known to Officer Tafi-si before he called Mr. Dell over to his car add up to a reasonable suspicion that criminal activity (specifically, a car break-in) had occurred, was occurring, or was about to occur? “In making this determination, we look at the totality of the circumstances to determine whether a particularized and objective basis, viewed from the standpoint of an objectively reasonable police officer, existed for suspecting legal wrongdoing.” United States v. Lopez, 518 F.3d 790, 797 (10th Cir.2008) (citing United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). Officer Tafisi made three observations which at least arguably play into the reasonable suspicion analysis: (1) Mr. Dell and his companion were in what the officer thought to be a high-crime neighborhood, particularly with regard to car break-ins and drug crimes; (2) Mr. Dell and his companion were peering into the windows of a legally parked car; and (3) Mr. Dell and his companion walked away from the parked car upon seeing that the patrolling officer was headed in their direction.
The Glendale neighborhood’s supposed high-crime status was given little weight by the district court. Officer Tafisi’s assertions about crime levels in Glendale were generalized and ambiguous, and he did not specify any portion of the Glendale area which had elevated crime rates. He said that Glendale had high crime rates for car break-ins, drugs, and other unspecified types of crime. See R. at 66. And, as the district court pointed out, no statistics or testimony backed up this claim other than Officer Tafisi’s comment that he had six and a half years’ experience patrolling the Glendale area.
In accordance with the proper standard of review, we must view the facts in the light most favorable to the defendant, and also refrain from denigrating the trial judge’s factual findings, which were made after the trial judge personally witnessed Officer Tafisi’s testimony at the suppression hearing.[3] The district court found *445 that Officer Tafisi’s beliefs about the area’s crime rate were anecdotal in nature, and not particularly probative or persuasive. Order at * 1, *5. Deferring to that finding, we decline to attribute significant weight to the fact that this incident took place in a supposed “high crime” area.
Similarly, Mr. Dell’s walking away upon seeing a police officer tells us very little about the likelihood of criminal activity taking place. To be sure, a defendant’s flight upon seeing the police can be quite probative. Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (“Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight — wherever it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.”). But walking away on the sidewalk in the same direction that a police officer is trav-elling does not speak to anything criminal at all. Indeed, while the Supreme Court has told us that “evasive” behavior can suggest criminal activity, the Court has characterized such behavior as an “obvious attempt[ ] to evade officers” or hide. United States v. Brignoni-Ponce, 422 U.S. 873, 885, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).
Walking down a public sidewalk, in the same direction as and in plain view of a patrolling officer such that the officer passes the walking suspect before reaching a nearby intersection, is nothing like the evasive behavior which has proved meaningful to the Court. Cf. Florida v. Rodriguez, 469 U.S. 1, 3 — 4, 6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984) (per curiam) (recognizing that an officer’s suspicion was further aroused where a suspect “attempted to move away” by pumping his legs “up and down very fast” after being told by his cohorts to “[g]et out of here”); United States v. Sokolow, 490 U.S. 1, 8-9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (acknowledging that taking an “evasive” path through an airport to avoid detection might arouse suspicion). In fact, here, walking away is arguably the least suspicious activity that Mr. Dell could have engaged in. After all, as we have just stated, running away certainly would have been suspicious. And staying put, continuing to linger around the car that the officer thought was the target of a break-in, would have added to the officer’s suspicion.[4] Although we consider the totality of circumstances in evaluating the degree of suspicion a reasonable officer would have held, this particular behavior contributes *446 little, if anything at all, to the suspiciousness of the situation.
Recognizing that the foregoing factors contribute little to the reasonable suspicion analysis, we must carefully consider Mr. Dell’s behavior of peering into the car window in tandem with his female companion. As to what exactly was observed, Officer Tafisi testified on direct examination:
I saw a male and a female. The male was standing on the driver’s side of the car and it was parked along side of the road.... [I]t appear[ed] to me that they were looking inside the car.... They were looking back and forth, and [they were] doing the same actions as [each] other.... It did not appear as if they were entering or exiting. It appeared that they were just standing there looking.
R. at 68-69 (punctuation edited). Officer Tafisi acknowledged that he never saw either Mr. Dell or his companion touch the parked car. R. at 87. He also said that the suspects were standing “within a few inches” of the parked car, and that they were standing somewhat tilted or hunched over as they looked into the car’s windows. R. at 99-100.
This behavior, when considered in conjunction with the other circumstances, is not enough to give rise to the level of suspicion required to justify Mr. Dell’s detention. Particularly troubling, though certainly not fatal on its own, is the absence of any illegal conduct by Mr. Dell (or his companion). All that Officer Tafisi observed was lawful conduct which, we are left to assume, he thought might be associated with other actions (either in the past or future) that might be illegal. The conduct observed by Officer Tafisi was so innocuous and so very much in the realm of ordinary behavior that it would not lead a reasonable officer to suspect that a car break-in had occurred or was about to occur.
The government’s argument that Mr. Dell’s behavior was “inherently suspicious” is conclusory, and skips the crucial part of reasonable suspicion analysis by failing to ask — or answer — why the officer’s observations indicated suspicious criminal behavior. Addressing the purpose of “prevention of crime,” Chief Justice Burger has stated for a unanimous Court, “even assuming that purpose is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it.” Brown v. Texas, 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).
To be sure, common sense tells us that if a break-in was happening, the observed conduct would almost necessarily be a part of that sequence of events. However, common sense also tells us that an array of lawful activities would also include the observed behavior. Peering into a car, we assume, typically occurs when a break-in happens; but it also occurs at many other times when nothing illegal is happening. Underscoring this point, Officer Tafisi only observed Mr. Dell and his companion having a momentary, fleeting interest in the vehicle — Mr. Dell and his companion had walked away from the car almost immediately after Officer Tafisi observed them peering into it. Perhaps a prolonged observation of Mr. Dell would have revealed behavior more closely associated with criminal activity. But what Officer Tafisi actually saw was too tame to suggest reasonable suspicion.
Although we are compelled to “grant deference to a trained law enforcement officer’s ability to distinguish between innocent and suspicious circumstances,” United States v. Lopez, 518 F.3d 790, 797 *447 (10th Cir.2008) (quotations omitted), there is little to defer to where the investigating officer demonstrates no connection between his training and experience and the suspicion of illegality. Officer Tafisi never articulated why his observations led him to suspect criminal activity — he did not discuss any prior experiences or training which supported his stated belief that a suspect peering into a car is likely involved in a car break-in.
Under Terry v. Ohio, an officer conducting an investigative detention must reasonably suspect that “criminal activity may be afoot.” Terry, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). If the officer wishes to conduct a frisk, the officer must reasonably suspect “that the persons with whom he is dealing may be armed and presently dangerous.” Id. In this case, only the first standard is in play, because a protective frisk was not part of the initial investigatory detention. In applying Terry ’s reasonable suspicion standard, we view “the totality of the circumstances to see whether the detaining officer had a ‘particularized and objective basis’ for suspecting legal wrongdoing.” Cortez v. McCauley, 478 F.3d 1108, 1123 (10th Cir.2007) (en banc) (quoting United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). And although Terry in some circumstances allows the police to briefly detain individuals without probable cause for an arrest, “any curtailment of a person’s liberty by the police must be supported by at least a reasonable and articulable suspicion that the person seized is engaged in criminal activity.” Reid v. Georgia, 448 U.S. 438, 440, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (emphasis added).
As the Ninth Circuit concluded: “A hunch may provide the basis for solid police work; it may trigger an investigation that uncovers facts that establish reasonable suspicion, probable cause, or even grounds for a conviction. A hunch, however, is not a substitute for the necessary specific, articulable facts required to justify a Fourth Amendment intrusion.” United States v. Thomas, 211 F.3d 1186, 1192 (9th Cir.2000). Officer Tafisi had what amounted to no more than a hunch based upon a momentary observation. Accordingly, his detention of Mr. Dell was an unreasonable Fourth Amendment seizure, and we AFFIRM.

 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

. Officer Tafisi initially testified that he said, “Come over,” but on cross-examination testified that he said, "Hey, come over.” In its recitation of facts, the district court did not explicitly recognize this discrepancy, and only acknowledged the “Hey, come over” statement. Because the government concedes that the encounter between Officer Tafisi and Mr. Dell was a nonconsensual one, we adopt the district court’s view of the testimony without inquiring further into the discrepancy, which is not material to resolution of the ultimate issue — the reasonableness of Officer Tafisi’s justification for seizing Mr. Dell.

. The government has complied with § 373l’s substantive certification requirements — i.e., it has certified that the appeal is not taken for the purpose of delay and that the suppressed evidence constitutes substantial proof of a fact material to the proceeding. Mr. Dell does not challenge the merits of the certification, nor do we see any reason to disagree with the government’s duly certified contentions.
Another potential problem lurks, though: The government did not file its notice of appeal within thirty days as required by § 3731. However, the district court granted an extension of the thirty-day statutory deadline for “good cause" pursuant to Fed. R.App. P. 4(b)(4). See Doc. 34. According to our precedent, § 373l’s thirty-day deadline — which is jurisdictional in nature — can be extended pursuant to Rule 4(b)(4). In re Grand Jury Proceedings, 616 F.3d 1186, 1199 (10th Cir.2010) ("Rule 4(b)(4) can extend the jurisdictional time limit imposed by 18 U.S.C. § 3731.”). Because the government filed its notice of appeal within the validly extended time limit, we have jurisdiction to hear this interlocutory appeal.

. Our dissenting colleague asserts that "Officer Tafisi's observations of the neighborhood he has patrolled for six-and-one-half years are inherently reliable,” and thus constitute "exactly the type of evidence we would want to determine the characteristics of a neighborhood.” Dissenting op. at 454 (emphasis omitted). Relying on these supposed indicia of reliability, the dissent gives substantial weight to Officer Tafisi’s testimony. Id. at 454-55.
Our standard of review forbids us from engaging in this type of appellate fact-finding, and instead requires us to defer to the facts as found by the district court. The dissent does not disagree with our statement of the proper standard of review. See dissenting op. at 449.
The dissent’s approach is troubling. Specifically, the dissent fails to defer to the district court’s factual finding that Officer Tafi-si’s observations were not particularly reliable or probative. See Order at *1, *5. We decline to join the dissent in overriding the district judge’s thoroughly stated factual findings, which were based on her observations of live testimony in open court. See Order at *1, *5 (giving little weight to Officer Tafisi’s testimo *445 ny about Glendale's supposed “high crime” status in light of the absence of meaningful supporting evidence).
The basis for the district court’s finding— personally witnessing Officer Tafisi's testimony — contrasts with the basis for the dissent’s interpretation of the facts, which is simply a reading of the cold record. Because we lack the benefit of having observed Officer Tafisi’s testimony in person, we must give deference to the district court’s characterization of it, and thus we decline to substitute our own views about the testimony for those of the trial judge.

. The dissent’s analysis relies heavily on the behavior of Mr. Dell's companion, arguing that it represented "furtive conduct” indicative of criminal activity. Dissenting op. at 457. We respectfully disagree. The companion’s conduct was, in our view, even more exculpatory in nature than Mr. Dell's own conduct, which was itself innocuous.
After all, if either Mr. Dell or his companion was involved in criminal activity, why would the companion be eager to return to the supposed scene of the crime while in the immediate vicinity of a uniformed police officer? Thus, although we do not quarrel with the dissent’s citation of authority establishing that furtive movements may add to an officer’s suspicion, we decline to join the dissent in characterizing the companion's reaction to the officer’s presence as “furtive conduct.”