**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 23, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DEON LAMON JONES,

    Plaintiff - Appellee,

v.

JOSE MANRIQUEZ; GREGORY
BLACK,

    Defendants - Appellants.

No. 19-1144
(D.C. No. 1:17-CV-01131-CMA-SKC)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MORITZ**, and **CARSON**, Circuit Judges.
_____

Officers Jose Manriquez and Gregory Black appeal the district court's order

denying their motion for summary judgment on Deon Jones's 42 U.S.C. § 1983

Fourth Amendment claims. For the reasons discussed below, we reverse.

**Background**

Around 1:30 a.m. on April 26, 2016, Jones sat in his car parked in a spot

reserved for business in a parking garage attached to a residential building. The

parking garage was marked with no-trespassing signs and was in a high-crime area

specifically known for trespass violations. The officers, also parked in the parking

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. _See_ Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

garage, noticed Jones, ran his license plate, and learned that his car was not registered to the address of the attached residential building. Suspecting Jones of trespass, the officers approached him and activated their body cameras. Jones informed Manriquez that he was waiting for a friend. He then started his car but turned it off after Black told him to. Black asked Jones to get out of the car, but Jones did not immediately comply. Eventually, Jones got out of the car and kneeled next to the driver's side door.

Black and other officers then handcuffed and arrested Jones for violating a Denver ordinance requiring compliance with a police officer's lawful orders. *See* Denver, Colo., Rev. Mun. Code ch. 38, art. II, § 38-31(c). While Jones was handcuffed and lying next to his car, Black searched him, including by reaching into Jones's pocket and removing a piece of paper. Shortly thereafter, and while Jones remained handcuffed next to his car, Manriquez opened the passenger-side door and looked under the seat and around the front area of Jones's car. Although officers later found that Jones was carrying a small amount of a suspected controlled substance, the city attorney ultimately declined to prosecute him.

Jones then brought this § 1983 suit against Black and Manriquez.[1] Relevant to this appeal, he claimed they violated his Fourth Amendment rights when they (1) detained him without reasonable suspicion, (2) arrested him without probable

---

[1] Jones included other defendants, but none are relevant to this appeal.

2

cause,[2] (3) searched him, and (4) searched his car. The officers moved for summary judgment, arguing that they were entitled to qualified immunity on all four claims.

The district court denied the motion with respect to each claim. First, it found that a jury could determine that the officers violated the Fourth Amendment when they detained Jones because the jury could find that the officers did not reasonably suspect Jones of any crime. And the district court denied qualified immunity on this claim, finding it clearly established that investigative detentions require reasonable suspicion. Second, the district court determined that because a reasonable jury could find that the officers lacked reasonable suspicion to detain Jones, a jury could also find that the stop was consensual and that the officers' orders were not lawful. Accordingly, the district court determined that a jury could find that the officers lacked probable cause to believe that Jones committed any crime, including failing to obey lawful orders, and thus could determine that the officers violated the Fourth Amendment when they arrested Jones. And the district court further concluded that this right was clearly established because, under Supreme Court precedent, "officers cannot arrest an individual for failing to identify himself when the officers lack reasonable suspicion of criminal activity." App. vol. 2, 359.

---

[2] The first claim in Jones's complaint, entitled "Unlawful Seizure of Person," includes allegations of both an unlawful seizure and an unlawful arrest. App. vol. 1, 19. Because the standards for determining whether a seizure and an arrest are different, we analyze these allegations as two separate claims, as do the parties. *See United States v. Sokolow*, 490 U.S. 1, 7 (1989) (noting that seizures require reasonable suspicion); *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011) (noting that arrests require probable cause).

3

Third, the district court found that because a reasonable jury could find that Jones's arrest violated the Fourth Amendment, it could also find that the search was unlawful as it would not be incident to a lawful arrest. And the district court denied qualified immunity on this claim, finding it clearly established that officers may not conduct a search pursuant to an unlawful arrest. Finally, the district court determined that a reasonable jury could find that Manriquez's belief that Jones was dangerous was unreasonable and thus could find that the search of Jones's car was unlawful. And the district court denied qualified immunity on this claim as well, finding it clearly established that without a belief that a detainee is dangerous, an officer cannot search his or her car. The officers appeal.

**Analysis**

When reviewing a summary-judgment order denying qualified immunity, we have jurisdiction to review "abstract issues of law" but not the "district court's factual conclusions."[3] *Fancher v. Barrientos*, 723 F.3d 1191, 1198 (10th Cir. 2013)

---

[3] The district court stated that it did not make independent factual findings at the summary-judgment stage and instead incorporated the findings from the magistrate judge's recommendation on the officers' motion to dismiss—even though the standards for determining facts at these two stages are different. *See Bell v. Fur Breeders Agric. Co-op.*, 348 F.3d 1224, 1230 (10th Cir. 2003) (reviewing "the difference in the standards applied to" motions to dismiss and motions for summary judgment). We note that the better practice is for district courts to explicitly set forth the universe of facts they rely on when granting or denying summary judgment on qualified-immunity grounds. *See Lewis v. Tripp*, 604 F.3d 1221, 1226 (10th Cir. 2010). But in this particular case, despite the district court's statement that it was not making separate factual findings at the summary-judgment stage, the analysis section of its summary-judgment order includes factual recitations. And importantly, the parties do not dispute the district court's consideration of any facts relevant to our decision here. For example, Jones notes that the district court considered the facts

(second quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1154 (10th Cir. 2008)). In doing so, we review "the district court's grant of summary judgment de novo, employing the same legal standard applicable in the district court." *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1311 (10th Cir. 2009). Under that standard, "we must grant qualified immunity unless [Jones] can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the [officers'] conduct." *Henderson v. Glanz*, 813 F.3d 938, 952 (10th Cir. 2015). Although the officers' assertion of qualified immunity alters Jones's burden at summary judgment, we "still view the facts in the light most favorable to [Jones] and resolve all factual disputes and reasonable inferences in [his] favor." *Id.*

## I.   Constitutional Violation

Jones alleges four separate Fourth Amendment violations: an unreasonable investigative detention, arrest, search of his person, and search of his car. As the analysis of each alleged violation turns on a separate standard, we consider each separately.

First, the investigative detention was unreasonable if the officers did not have reasonable suspicion. *Sokolow*, 490 U.S. at 7. That is, Manriquez and Black must have witnessed an "objective manifestation that [Jones was], or [was] about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981).

---

that he was "parked in a parking spot reserved for business" and that the area surrounding the parking garage is "known for trespass." Aplee. Br. 27. And in so doing, he does not dispute these facts.

Reasonable suspicion "contains two elements": (1) "the assessment must be based upon all the circumstances" and (2) that assessment "must raise a suspicion that the particular individual being stopped is engaged in wrongdoing." *Id.* at 418. But this level of suspicion is not high—"[a]ll reasonable suspicion requires is 'some minimal level of objective justification.'" *U.S. v. Albert*, 579 F.3d 1188, 1197 (10th Cir. 2009) (quoting *Sokolow*, 490 U.S. at 7). Manriquez and Black argue they reasonably suspected Jones of trespass in violation of both Denver and Colorado law because they reasonably suspected that he did not have permission to be in the parking garage. *See* Colo. Rev. Stat. § 18-4-503(1); Denver, Colo., Rev. Mun. Code ch. 38, art. IV, § 38-115. Thus, to justify the investigative detention of Jones, the totality of the circumstances must have supported a suspicion that Jones did not have permission to be in the parking garage.

Here, before the officers detained Jones, they had observed the following: Jones sat in a car around 1:30 a.m. parked in a parking spot reserved for business. The parking garage was attached to a residential building in an area with high crime rates and a history of trespass, and the garage was marked with no-trespassing signs. The car was not registered to the address of the residential building attached to the parking garage. When the officers approached Jones, he told them he was waiting for a friend. Thus, to meet his burden on appeal, Jones must demonstrate that these facts, taken as a whole, do not give rise to reasonable suspicion that he was trespassing. *See Cortez*, 449 U.S. at 417 (1981) (noting that when conducting reasonable-suspicion

6

analysis, "the totality of the circumstances—the whole picture—must be taken into account").

In attempting to carry his burden, Jones first argues that the officers' suspicion was not reasonable because it was not particularized to him. Specifically, he contends that the officers' suspicion stemmed entirely from the area's history of trespass and high crime rate as opposed to facts specific to Jones.

It is true that presence in a high-crime area alone is insufficient to establish reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). But it is a "relevant contextual consideration[]." *Id*. And here, the officers had more than just knowledge that Jones was in a high-crime area. Jones was in the garage around 1:30 a.m. *See United States v. McHugh*, 639 F.3d 1250, 1257 (10th Cir. 2011) ("[T]he fact that an incident occurred late at night or early in the morning is relevant to the [reasonable-suspicion] analysis."). Moreover, Jones was parked in a reserved parking spot and the officers determined that Jones's car was not registered to the address associated with the parking garage—both facts particularized to Jones. And although the area's history of trespass would be insufficient to establish reasonable suspicion on its own, taken as a whole, these facts suggest a particularized and reasonable suspicion that Jones lacked permission to be in the parking garage. *See Cortez*, 449 U.S. at 417.

Next, Jones argues that the officers did not have reasonable suspicion because his conduct was innocent. But when determining whether "reasonable suspicion exists," an officer "need not rule out the possibility of innocent conduct." *United*

7

*States v. Arvizu*, 534 U.S. 266, 277 (2002); *see also Sokolow*, 490 U.S. at 9–10 ("[T]he relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983))). Accordingly, the officers were not required to rule out the possibility that Jones had permission to be in the garage in order to have had reasonable suspicion that he was trespassing. Instead, even if the officers determined that Jones's conduct was "ambiguous and susceptible of an innocent explanation," they were nevertheless permitted to "detain [Jones] to resolve the ambiguity." *Wardlow*, 528 U.S. at 126.

Jones further argues that his explanation that he was waiting for a friend should have dissipated the officers' purported reasonable suspicion. Jones does not contend that law enforcement must always credit a suspect's explanation. Instead, he argues that in cases where law enforcement appropriately discredited an individual's explanation, there was good reason to doubt that explanation. *See, e.g.*, *District of Columbia v. Wesby*, 138 S. Ct. 577, 587 (2018) (determining that law enforcement properly discredited partygoers' explanation for their lawful presence in house where partygoers "gave vague and implausible responses" to police questioning, "claimed the event was a bachelor party, but . . . could [not] identify the bachelor," and "scattered at the sight of uniformed officers"). Here, Jones continues, the officers had no reason to disbelieve him. The officers, on the other hand, argue that they are "simply not required to accept a suspect's explanation of his conduct at face value." Aplt. Br. 27.

8

But the appropriate inquiry is not whether and when law enforcement must believe suspects. Instead, the appropriate reasonable-suspicion analysis considers Jones's explanation as one fact among the others that comprise the totality of the circumstances. *See Arvizu*, 534 U.S. at 274 (emphasizing that viewing facts "in isolation from each other does not take into account the 'totality of the circumstances'"); *cf. Wesby*, 138 S. Ct. at 588 (noting that when determining whether law enforcement had probable cause, courts should consider "all of the surrounding circumstances, including the plausibility of [any] explanation"). And the totality of the circumstances here—including Jones's explanation—suggest that the officers reasonably suspected Jones of trespassing. We thus reject Jones's argument that he "credibly explained his presence in a way that vitiated any possible suspicion for trespassing." Aplee. Br. 15.

Considering the totality of the circumstances—the time of day, the high-crime area with a specific history of trespassing, the reserved parking spot, the no-trespassing signs, and the address registered to Jones's car—we determine that the officers reasonably suspected that Jones was trespassing, even though Jones may have had an innocent or legitimate purpose for being in the garage. As a result, the investigative detention did not violate his Fourth Amendment right to be free from unreasonable seizures. *See Sokolow*, 490 U.S. at 7; *United States v. Villagrana-Flores*, 467 F.3d 1269, 1276 (10th Cir. 2006) (finding that law enforcement legally detained suspect when they had reasonable suspicion to believe he was trespassing).

Our determination that the officers had reasonable suspicion leads to our conclusions on the constitutionality of Jones's arrest and the two searches. Regarding the arrest, the officers assert that (1) because they had reasonable suspicion to detain Jones, Black's orders to Jones were lawful and (2) by not complying with these orders, Jones violated § 38.31(c), the Denver ordinance prohibiting the "fail[ure] to obey a lawful order of a police officer if such failure interferes with or hinders such police officer in the discharge of his [or her] official duties." In response, Jones argues only that Black's orders were not lawful because Black lacked reasonable suspicion to detain him in the first place. But as just outlined, the officers did have reasonable suspicion to detain Jones. And Jones does not assert that Black's orders were unlawful for any other reason. Because the officers therefore had "probable cause to believe that [Jones had] committed even a very minor criminal offense in [their] presence," they were permitted to arrest him without violating the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). And further, because "a lawful arrest, standing alone, authorizes a search" of the arrestee, the officers' search of Jones after the arrest did not violate Jones's Fourth Amendment right to be free from unreasonable searches. *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979).

Finally, Jones argues that Manriquez violated his Fourth Amendment rights by searching his car because the stop leading to the search was not "justified at its inception." Aplee. Br. 25 (quoting *United States v. King*, 990 F.2d 1552, 1557 (10th Cir. 1993)). But because the officers had reasonable suspicion to detain Jones, the

stop was "justified at its inception." *Id.* (quoting *King*, 990 F.2d at 1557).

Accordingly, this argument fails.[4] We thus find that Jones did not meet his burden of

demonstrating that Manriquez violated his constitutional rights by searching his car.

*See Henderson*, 813 F.3d at 952.

In sum, we determine that the officers had reasonable suspicion that Jones was

trespassing, such that their investigative detention of Jones did not violate his Fourth

Amendment rights. *See Sokolow*, 490 U.S. at 7. We also determine that when Jones

did not comply with Black's orders to exit his car, the officers had probable cause

that Jones violated a Denver ordinance, such that Jones's arrest did not violate his

Fourth Amendment rights. *See Atwater*, 532 U.S. at 354. Further, we determine that

the officers' search of Jones was a lawful search incident to arrest under the Fourth

Amendment. *See DeFillippo*, 443 U.S. at 35. Finally, we determine that because the

stop was justified at its inception, Jones did not demonstrate that Manriquez violated

his Fourth Amendment rights when he searched Jones's car. *See King*, 990 F.2d at

1557.

## II.  Clearly Established Law

Even if we were to assume that Jones established a constitutional violation on

any of his four claims, we would nevertheless grant qualified immunity because

---

[4] Jones does not argue that the search violated the standard set forth by
*Arizona v. Gant*, which permits "[p]olice [to] search a vehicle incident to a recent
occupant's arrest only if the arrestee is within reaching distance of the passenger
compartment at the time of the search or it is reasonable to believe the vehicle
contains evidence of the offense of arrest." 556 U.S. 332, 351 (2009). We therefore
do not consider any such argument.

11

Jones does not carry his burden of showing that the law was clearly established at the time of the incident. *See Henderson*, 813 F.3d at 952. A right is clearly established if, at the time the right was violated, it was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Stated differently, Jones must show that no reasonable officer facing the same circumstances as the officers here could have determined that that it was constitutional to detain, arrest, or search Jones or his car. To do so, Jones must (1) "identif[y]" a factually similar "Supreme Court or published Tenth Circuit decision," (2) show that "the clearly established weight of authority from other courts [has] found the law to be as [he] maintains," *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018) (quoting *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015)), or (3) show that "the unlawfulness of the [officers'] conduct is sufficiently clear even though existing precedent does not address similar circumstances," *Wesby*, 138 S. Ct. at 590.

Regarding the first alleged constitutional violation, Jones first looks to in-circuit law and cites to a single Tenth Circuit opinion—*United States v. Dell*, 487 F. App'x 440 (10th Cir. 2012) (unpublished)—to support his argument that the officers violated his clearly established rights when they detained him. But *Dell* is too factually distinct to clearly establish law for this case. There, the officer observed individuals in a purportedly high-crime area looking into a car's windows and then walking away from the car after noticing the officer approach. *Dell*, 487 F. App'x at

12

444. But the *Dell* district court gave little weight to the officer's high-crime characterization, and the *Dell* reviewing court deferred to that factual finding. *Id.* at 445. Further, *Dell* minimized the fact that the defendant walked away from the officer. *Id.* at 445. Thus, that reasonable-suspicion analysis largely turned on the officer's observation of individuals looking into a parked car. *See id.* at 445–46. Accordingly, *Dell* is too dissimilar to be useful here, and we therefore do not find that Tenth Circuit law clearly establishes Jones's right to be free from an unreasonable investigative detention in these circumstances. *See Mullenix*, 136 S. Ct. at 308.

Next, Jones cites to four out-of-circuit cases for the broad proposition that "momentar[y] observa[tion of] innocuous behavior, that could under certain circumstances also be indication of illicit activity," does not give rise to reasonable suspicion. Aplee. Br. 29. But the clearly-established-law analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). And this principle is too general to clearly establish Jones's right here. Moreover, the four cases Jones relies on are not factually similar to the circumstances faced by the officers here, and "[t]he dispositive question is 'whether the violative nature of *particular conduct* is clearly established.'" *Id.* (emphasis added) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)); *see also United States v. Lowe*, 791 F.3d 424, 434–35 (3d Cir. 2015) (finding no reasonable suspicion to detain individual where officers received anonymous tip that someone matching

13

individual's description in high-crime area had gun); *United States v. Hill*, 752 F.3d 1029, 1029–31 (5th Cir. 2014) (finding police did not have reasonable suspicion to detain driver where driver was parked in high-crime area around 11:00 p.m. and police saw his passenger leave and walk quickly toward apartment building); *United States v. Johnson*, 620 F.3d 685, 688–89 (6th Cir. 2010) (finding no reasonable suspicion to detain man where officers received anonymous call about "suspicious people around a blue Cadillac," located Cadillac in high-crime area, then saw man carrying bag walking past Cadillac toward different car); *Patterson v. City of Cleveland*, No. 97-4226, 1999 WL 68576, at *6 (6th Cir. Jan. 21, 1999) (unpublished) (finding officer did not have reasonable suspicion when she saw two men possibly exchanging something and then moving apart upon seeing officer). Thus, these four cases do not provide clearly established law.

We further reject Jones's argument that the officers' "conduct was so obviously unconstitutional that [Jones] need not" cite to a factually similar case. Aplee. Br. 32. To be sure, there are constitutional violations that are so "obvious" that "the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Wesby*, 138 S. Ct. at 590 (2018) (first quoting *Brosseau*, 543 U.S. at 199); *see also Colbruno v. Kessler*, 928 F.3d 1156, 1164–66 (10th Cir. 2019) (finding officers obviously violated individual's due-process rights by requiring pretrial detainee to walk naked through hospital and denying qualified immunity even in absence of factually similar case). But such an analysis typically does not apply to an officer's judgment that "turn[s] on the

14

assessment of probabilities in particular factual contexts." *Wesby*, 138 S. Ct. at 590 (alteration in original) (quoting *Gates*, 462 U.S. at 232) (explaining why plaintiffs needed factually similar cases to clearly establish that officers did not have probable cause to arrest). And "reasonable suspicion . . . is not 'readily, or even usefully, reduced to a neat set of legal rules.'" *Sokolow*, 490 U.S. at 7 (quoting *Gates*, 462 U.S. at 232); *see also United States v. Cortez*, 449 U.S. at 418 (noting that reasonable suspicion "does not deal with hard certainties, but with probabilities"). Thus, any right that the officers may have violated by detaining Jones was not so obvious that factually similar cases are unnecessary to clearly establish the right.

Finally, Jones does not argue for any clearly established law on his remaining three claims. We therefore decline to consider this prong of the qualified-immunity test for those three claims.

## Conclusion

Jones does not meet his burden of showing that the officers violated his constitutional rights. And even if he did, he does not meet his burden of showing that any violated right was clearly established at the time of the incident. Thus, we hold

15

that the officers are entitled to qualified immunity and reverse the district court's

order concluding otherwise.

Entered for the Court


Nancy L. Moritz
Circuit Judge